UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASON CADRETTE,

                      Plaintiff,                  6:11-cv-320
                                                               (GLS)
          v.

MICHAEL J. ASTRUE, as
Commissioner of Social Security,

                      Defendant.
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter W. Antonowicz      PETER W. ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, NY 13440

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    JASON P. PECK
United States Attorney                 Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Mary Ann Sloan
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Jason Cadrette challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI),[1] seeking judicial review under 42 U.S.C. § 405(g).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Cadrette's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On October 26, 2007, Cadrette, who suffers from, among other things, a right shoulder ailment and affective mood disorder, filed an application for SSI under the Social Security Act ("the Act"), alleging disability since January 5, 2007.  (*See* Tr.[2] at 15, 119-25, 128.)  After his application was denied, (*see id.* at 83-87), Cadrette requested a hearing before an Administrative Law Judge (ALJ), which was held on June 8, 2009.  (*See id.* at 22-81, 88-90.)  On December 22, 2009, the ALJ issued a

---

[1] Because no application for Disability Insurance Benefits (DIB) appears in the record and it is otherwise clear that Cadrette's request for review pertains only to his application for SSI, the court ignores the mistaken reference to DIB in his complaint.  (*See* Compl. ¶¶ 3-4, Dkt. No. 1.)

[2] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 9.)

2

decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-4, 9-21.)

Cadrette commenced the present action by filing a complaint on March 22, 2011 wherein he sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 12, 15.)

### III.  Contentions

Cadrette contends that the Commissioner's decision is tainted by errors of law. (*See* Dkt. No. 12 at 8-16.) Specifically, Cadrette claims that the ALJ: (1) committed error in determining his residual functional capacity (RFC); and (2) improperly assessed his credibility regarding nonexertional limitations. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (*See* Dkt. No. 15 at 14-22.)

### IV.  Facts

The court adopts the parties' undisputed factual recitations. (*See id.*

3

at 1-11; Dkt. No. 12 at 3-5.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

Cadrette first argues that the ALJ erred in determining that he has the RFC to perform light work with certain limitations. (*See* Dkt. No. 12 at 8-12.) In particular, Cadrette contends that the opinions of two treating nurse practitioners, Debra Dermady and Susan Hauptfleisch, relevant to Cadrette's nonexertional limitations, were not given appropriate weight by the ALJ in making her RFC determination. (*See id.*) Cadrette also asserts that the ALJ relied too heavily upon evidence from nontreating sources and substituted her own opinion for the opinions of medical experts. (*See id.*)

4

The Commissioner counters that neither Dermady nor Hauptfleisch are acceptable medical sources, and that, although the ALJ should have assessed Dermady's opinion in accordance with SSR 06-03p, the ALJ's failure to do so was, "at most, harmless error" because Dermady's statement was not specific as to work-related limitations resulting from Cadrette's pain and was not supported by other evidence in the case record. (Dkt. No. 15 at 14-17.) Similarly, the Commissioner argues that the ALJ properly discounted Hauptfliesch's opinion, which largely reflects that Cradette has "serious[]" nonexertional limitations, because it is not supported by other evidence from acceptable medical sources. (*See id.* at 17-19.) The court agrees with the Commissioner that the ALJ's RFC determination is not tainted by error and is supported by substantial evidence.

While the opinions of nurse practitioners are not sufficient to establish an impairment inasmuch as nurse practitioners are not "acceptable medical sources," they are considered "other sources" whose opinions *may* be used to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(a), (d)(1); *see Crysler v. Astrue*, 563 F. Supp. 2d 418, 434-35 (N.D.N.Y. 2008). The opinions of other sources "are important and

should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). Moreover, given the requirement that all available evidence contained within a claimant's case record be reviewed in assessing the existence of a disability, *see* 42 U.S.C. § 423(d)(5)(B), the adjudicator should generally indicate her consideration of "other source" opinions and explain the weight assigned to them to "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p, 2006 WL 2329939, at *6. Discussion of these kinds of opinions is not always required, however; this is particularly true where the "other source" fails to "render an opinion as to the physical limitations imposed by [a particular impairment]." *See, e.g.*, *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *16 (N.D.N.Y. Mar. 27, 2008).

    Here, the ALJ did not err with respect to the opinions of either Dermady or Hauptfleisch. First, considering Dermady, she opined that Cadrette's pain is "present to such an extent as to be distracting to adequate performance of daily activities or work," his "[p]hysical activity,

6

such as walking, standing, lifting, carrying, bending, etc. . . . increases pain to the extent that medication and/or bed rest is necessary," and "medication will severely limit [Cadrette]'s effectiveness in the work place due to distraction, inattention, drowsiness, etc." (Tr. at 318.) Because Dermady's opinion, which—given the nature of the form in which it is presented and the lack of any accompanying treatment notes—appears to be a "mere regurgitation of [Cadrette]'s . . . subjective complaints of symptoms," only generically indicates the functional limitations associated with Cadrette's pain emanating from his shoulder impairment, the ALJ was not required to discuss and evaluate it consistent with the factors set forth in SSR 06-03p. *See McConnell*, 2008 WL 833968, at *16.

Moreover, the opinions of "acceptable medical sources"—Drs. Kalyani Ganesh and Richard Chmielewski—were inconsistent with that of Dermady as to Cadrette's functional limitations and supported the ALJ's RFC determination. (*See* Tr. at 192-95, 311, 313-14.) Specifically, Ganesh, a consultative examiner, found, among other things, that Cadrette was in no acute pain, had a normal gait, needed no help changing for the exam or getting on or off of the examination table, was able to rise from a chair without difficulty, and had good range of motion and strength. (*See*

7

*id.* at 193.)  In sum, Ganesh found "[n]o gross physical limitation to sitting, standing, or walking" and only "[m]ild limitation lifting, carrying, pushing, and pulling."  (*Id.* at 194.)  During several examinations, Chmielewski, Cadrette's treating physician, made similar findings regarding Cadrette's good range of motion in his impaired shoulder and that he had "minimal discomfort" or "essentially no pain."  (*Id.* at 311, 313, 314.)

Hauptfleisch, who provided care to Cadrette relative to his mental health impairments, (*see id.* at 51), opined that he had serious limitations in his ability to: follow rules; relate to co-workers; deal with the public; use judgment; deal with work stress; maintain attention; understand, remember, and carry out complex job instructions; understand, remember, and carry out detailed, but not complex, job instructions; behave in an emotionally stable manner; and demonstrate reliability.  (*See id.* at 250-51.)  Hauptfleisch also found that Cadrette could not relate to supervisors at all, but that he was able to understand, remember, and carry out simple job instructions and relate predictably in social situations for five hours per day, and he could function independently and maintain personal appearance for up to eight hours per day.  (*See id.*)  In evaluating Hauptfleisch's opinion,

the ALJ properly considered the factors set out in SSR 06-03p.[3] (*See id.* at 19.) The ALJ accorded the opinion "little weight," but, ultimately, was not dissuaded from giving "great weight" to a less restrictive opinion provided by Dr. Alan Dubro. (*Id.*) Dubro opined that Cadrette

> is capable of following, understand[ing], remembering, and attending to directions and instructions. He can perform simple and complex tasks independently. He is able to maintain attention and concentration for rote tasks. He is capable of regularly attending to a routine and maintaining a schedule. He is capable of making appropriate decisions. He is able to learn rote tasks. [He] has displayed interpersonal difficulties that have led to him being incarcerated in the past.
> Results of the examination appear to be consistent with behavior problems, but in itself, this does not appear to be significant enough to interfere with [Cadrette]'s ability to function on a daily basis.

(*Id.* at 199.) Dubro's opinion of Cadrette's nonexertional limitations—and to a lesser, but not insignificant extent, the opinion of Hauptfleisch—is reflected in the RFC determination, finding that Cadrette can perform light work with restrictions on, among other things, his interaction with supervisors, co-workers, and the general public. (*See id.* at 17.)

---

[3] For example, the ALJ considered, among other things, the length and frequency of treatment, the consistency of the opinion with other evidence, and how well Hauptfleisch explained her opinion, (*see* Tr. at 19)—all of which are relevant and appropriate factors for evaluating other source opinions. *See* SSR 06-03p, 2006 WL 2329939, at *4-5.

Accordingly, the ALJ applied the proper legal standards and her RFC determination is supported by substantial evidence.

## B. Credibility Determination

In an argument partially reliant on the foregoing one that the RFC determination was erroneous, Cadrette contends that the ALJ "improperly evaluated [his] allegations of non-exertional limitations." (Dkt. No. 12 at 13-16.) Specifically, Cadrette claims that the ALJ erred by finding him not credible as to his subjective statements regarding symptoms despite the fact that his testimony was consistent with the opinions of Dermady and Hauptfleisch, and the record demonstrated that his behavior was generally volatile. (*See id.*) In response, the Commissioner argues, and the court agrees, that the ALJ's credibility determination is supported by substantial evidence. (*See* Dkt. No. 15 at 19-22.)

An ALJ must consider a claimant's subjective complaints of limitations resulting from his impairments, including those from pain, in gauging his RFC. *See* 20 C.F.R. § 416.945(a)(3). However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). The Commissioner is obligated to evaluate all of a claimant's symptoms,

10

"including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 61 Fed. Reg. 34483, 34485-86 (July 2, 1996). Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations regarding limitation as long as she sets forth her "reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ properly found Cadrette's subjective reports of his symptoms incredible. (*See* Tr. at 18.) During the hearing, Cadrette testified, and the ALJ acknowledged, that he is in constant pain and cannot stand contact with people in the workplace, yet he does not like to be isolated either. (*See id.* at 40, 42, 43, 54-55.) As the ALJ explained, Cadrette's testimony was belied by the above-referenced evaluations of

11

Ganesh and Dubro. (*See id.* at 18-19.) Moreover, Cadrette's testimony was inconsistent, and he even acknowledged to the ALJ that he was not truthful about his participation in two softball leagues. (*See, e.g., id.* at 43, 54-55, 60.) Thus, the ALJ's credibility determination is amply supported by substantial evidence in the record.

### VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Cadrette's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

April 24, 2012
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court